*Frank W. Volk*

Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**UNITED STATES BANKRUPT**
**SOUTHERN DISTRICT OF WES**
**AT HUNTINGTON**

**Dated: July 24th, 2017**

| | |
|---|---|
| IN RE:<br><br>PETE LAWRENCE GILLESPIE, II,<br><br>        Debtor. | CASE NO. 3:16-bk-30224<br><br>CHAPTER 13<br><br><br>JUDGE FRANK W. VOLK |
| TABITHA D. GILLESPIE,<br><br>        Plaintiff,<br>v.<br><br>PETE LAWRENCE GILLESPIE, II,<br><br><br>        Defendant. | ADVERSARY PROCEEDING NO.<br>3:16-ap-03011 |

## MEMORANDUM OPINION AND ORDER

Pending is the Motion for Summary Judgment and Motion to Dismiss filed by Defendant Peter Lawrence Gillespie, II, on March 9, 2017. [Dckt. 9].

A Response and embedded cross motion for summary judgment were filed by Plaintiff Tabitha D. Gillespie on May 30, 2017.[1] [Dckt. 15]. A Reply was filed by Defendant Peter Lawrence Gillespie, II, on June 12, 2017. [Dckt. 17]. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

---

[1]     This practice contravenes the Local Rules. In the interest of judicial economy, however, the request will be treated as a cross-motion for summary judgment. Any future requests for affirmative relief must be made by separate motion.

**I.**

On September 15, 2014, the Family Court of Cabell County ("the Family Court")

entered an order ("the 2014 order") divorcing Peter and Tabitha after fourteen years of marriage.

[Dckt. 9-1]. The 2014 order stated pertinently that Peter (1) pay $283.19 per month to Tabitha as

child support, (2) would receive two parcels of real property and (3) would pay Tabitha $50,000.

The 2014 order also calculated Peter's past-due child support obligation at $2,490. [Dckt 9-1 at 2–

5]. Importantly, the 2014 order did not impose any spousal support obligations consistent with the

parties' mutual waiver. [Dckt. 9-1 at 6].

The Family Court entered a second order on April 20, 2016 ("the 2016 order"). The

2016 order modified the 2014 order, in part. [Dckt. 9-2]. In the 2016 order, the Family Court noted

that Peter had contracted to sell real estate for $11,500. [Dckt. 9-2 at 1]. The Family Court ordered

that "[u]pon sale, the net proceeds shall first be applied towards the child support arrears and the

balance shall be paid to [Tabitha] to reduce the judgement [sic] she has against [Peter]." [Dckt. 9-

2 at 1]. The Family Court also stated that Peter's monthly payments to Tabitha were not spousal

support, but "a result of a judgement [sic] she has against him for equitable distribution" of marital

property. [Dckt. 9-2 at 1].

Peter filed a Chapter 13 petition on May 6, 2016. [Dckt. 1 at 1]. On August 29,

2016, Tabitha commenced this adversary proceeding upon Peter's decision to keep the

aforementioned property sale proceeds. [Dckt. 1 at 1]. Tabitha alleges that the debt owed to her is

nondischargeable as a debt "for fraud or defalcation while acting in a fiduciary capacity" under 11

U.S.C. § 523(a)(4).  *See* 11 U.S.C. § 1328(c)(2) (including debts "of a kind specified in section

523(a)" as falling outside the parameters of a Chapter 13 discharge).  While it is found nowhere in

the complaint, Peter understands Tabitha to assert, alternatively, that the 2016 order required a

2

portion of the proceeds be applied to child support arrears, ostensibly creating a domestic support

obligation under § 523(a)(5). [Dckt. 1 at 1–2]. Peter has stipulated to all factual allegations

contained in the complaint and seeks judgment as a matter of law.  He contends that the debt falls

outside the parameters of both §§ 523(a)(4) and 523(a)(5). [Dckt. 9 at 1, 3]. Peter asserts the debt

is dischargeable, as it is instead within § 523(a)(15), which encompasses debts to a former spouse

not governed by subsection (a)(5) and incurred in the course of divorce. [Dckt. 9 at 3].


## II.


### A.  Governing Standard Respecting the Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and

plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson

v. Pardus*, 551 U.S. 89, 93 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge

a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ.

P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*,

550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780

F.3d 582, 585 (4th Cir. 2015).  Additionally, the showing of an "entitlement to relief" amounts to

"more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558.  It is now settled that "a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*,

780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

3

The complaint need not "plead facts sufficient to establish a prima facie case . . . to survive a motion to dismiss, but . . . the more stringent pleading standard established in *Iqbal* and *Twombly* applies." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (citing *Twombly*, 550 U.S. at 569-70).  Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

4

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'"  *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)).  The Court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Lest one lose the forest for the trees, it bears emphasizing that "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of th[e alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Woods v. City of Greensboro,* 855 F.3d at 652 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

**B.      Analysis Respecting the Motion to Dismiss**

Tabitha alleges that Peter -- by retaining the proceeds of the property sale instead of paying them over to her as ordered by the Family Court -- committed fraud or defalcation while acting in a fiduciary capacity, resulting in a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4).  Our court of appeals has noted that, "In order to prove a debt is non-dischargeable under § 523(a)(4) of the Bankruptcy Code, a creditor must prove the debtor committed '[1] fraud or defalcation [2] while acting in a fiduciary capacity.'"  *In re Ansari*, 113 F.3d 17, 20 (4th Cir. 1997); 11 U.S.C. § 523(a)(4).

Turning first to the term "fiduciary," the Court has previously concluded that it "is not to be construed expansively, but instead is intended to refer to 'technical' trusts."  *Brannon v. Reynolds (In re Reynolds)*, 543 B.R. 236, 243 (Bankr. S.D. W. Va. 2015). The recent impressions

of my good colleague in the North are also instructive. Chief Judge Flatley has observed that, under federal law, the term "fiduciary" "applies only to technical or express trusts; it does not generally apply to fiduciary duties implied by law from the contract." *Huntington Nat'l Bank v. Aman (In re Aman)*, 498 B.R. 592, 603 (Bankr. N.D. W. Va. 2013); *see also In re Pak*, No. 16–bk–560, 2017 WL 1207533, at *4 (Bkrtcy. N.D. W. Va. Mar. 31, 2017).

A technical trust requires "trust-type obligations that are imposed under statute or common law." *In re Aman*, 498 B.R. at 604. Fiduciary relationships require "the same high standard as a trust" and may be created where there is a difference in knowledge or power between the fiduciary and principal. *Id*. These are relationships that require "the principal to repose a special confidence in the fiduciary," such as a lawyer-client or a director-shareholder relationship. *Id*. (internal citations and quotations omitted). The relationship between the parties must be more than a mere debtor-creditor relationship. *See In re Engleman,* 271 B.R. 366 (Bankr. W.D. Mo. 2001).

Tabitha fails to allege that Peter was acting in a fiduciary capacity when he committed any alleged fraud or defalcation by failing to pay over under the terms of the 2016 order. Her conclusory allegation that the 2016 order "placed . . . [Peter] in the fiduciary capacity" does not approach the supporting factual allegations necessary to state a § 523(a)(4) claim.  The § 523(a)(4) claim is thus infirm.

It is, accordingly, **ORDERED** that the Motion to Dismiss be, and hereby is, **GRANTED** as to the § 523(a)(4) claim.

# III.

## A. Governing Standard Respecting the Motion for Summary Judgment

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgement is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), Fed. R. Bankr. P. 7056. The burden is on the nonmovant to produce a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). This burden is discharged with "sufficient proof in the form of admissible evidence" rather than relying solely on the allegations of the complaint. *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

The Court "view[s] the evidence in the light most favorable to the [nonmoving] party." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (internal quotation omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *Fairview Property Investments, LLC*, 828 F.3d at 216 (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.).

## B.   Analysis

The purpose of the "fresh start" accomplished by the discharge is to protect "honest but unfortunate" debtors. *Bosiger v. US Airways, Inc.*, 510 F.3d 442, 448 (4th Cir. 2007). Courts

7

thus narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Kubota*, 524 F.3d at 497 (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). The burden is on the creditor to prove the exception to discharge by a preponderance of the evidence. *Gronan v. Garner*, 498 U.S. 279, 287–88 (1991); *Kubota*, 524 F.3d at 497.

As noted, Peter appears to contemplate that Tabitha seeks also a nondischargeability finding under § 523(a)(5), which relates to domestic support obligations. Again, this claim is not pled in her complaint, but Peter joins the issue and analyzes it in his dispositive motion.  (*See* Mot. at 5).

Domestic support obligations are defined by 11 U.S.C. § 101(14A), which encompasses, in relevant part, debts that are (a) owed to a former spouse, child, or governmental unit; (b) in the nature of alimony, maintenance, or support of such former spouse or child; and (c) established by an order of a court of record. It is well established that child support debts are nondischargeable under § 523(a)(5). See *Grogan*, 498 U.S. at 277 (referencing the "nondischargeability under § 523(a)(5) of claims for child support") (dictum). Peter responds that the debt owed to Tabitha as a result of his retention of the property sale proceeds does not fall under § 523(a)(5) but is, instead, covered by § 523(a)(15), which permits the discharge of debts to a former spouse that are not domestic support obligations and that were incurred in the course of divorce. 11 U.S.C. § 523(a)(15).

The debt at issue is composed of two parts: (1) the portion that the 2016 order required be applied toward child support arrears, and (2) the remainder that was to be paid to Tabitha. It is important to consider these distinct portions of the debt separately.

8

### 1. Child Support Arrears

Peter points to the provision in the 2016 order stating that, "The monthly payments to [Tabitha] from [Peter] are as a result of a judgment she has against him for equitable distribution," meaning they are not in the nature of spousal support. [Dckt. 9-2 at 1]. He appears to argue that the 2016 order modified the 2014 order with respect to the monthly payments in addition to the child support arrears, by its description of these payments as "equitable distribution."

It is important to note that the only monthly payments imposed by the 2014 order are child support payments. [Dckt. 9-1 at 2–3]. While the 2014 order creates a monthly child support obligation, it makes no mention of the property sale or any other means by which the child support obligation was to be paid. The 2016 order modified the 2014 order with respect to the payment of child support *arrearages* but did not affect the continuing monthly child support payment obligation.

The 2016 order describing the monthly child support obligation as equitable distribution, rather than domestic support, is not dispositive in any event. Title 11 U.S.C. § 101(14A)(B) defines domestic support as "in the nature of . . . support . . . of such spouse, former spouse, or child of the debtor . . . *without regard to whether such debt is expressly so designated*." (emphasis added). Monthly child support payments, and also their arrears, are certainly "in the nature of support," and it is well established that child support debts are nondischargeable under § 523(a)(5). See *Grogan*, 498 U.S. at 277 (referencing the "nondischargeability under § 523(a)(5) of claims for child support") (dictum); *Patel v. Shamrock Floorcovering Servs., (In re Patel)*, 565 F.3d 963, 967 (6th Cir. 2009) (noting child support is nondischargeable under § 523(a)(5)).

Irrespective of the words in the 2016 order used to describe the payments, they remain "in the nature of support." This is further evidenced by the requirements the Family Court imposed on the monthly child support payments in the 2014 order, namely, (1) payments are made "as child support for the infant children;" (2) payments "continue for each child until that child reaches the age of 18, marries, dies, [or] becomes otherwise emancipated;" and (3) payments are extended when the child is pursuing an education. [Dckt. 91-1 at 3]. Thus, the terms of the monthly payment obligation indicate that the children receive *support* until they are able to support themselves. The phrase "equitable distribution" found in the 2016 order does not change the substance of the obligation.

The continuing monthly child support obligation and the arrears stemming from it are, accordingly, domestic support obligations. By ordering that "the net proceeds shall first be applied towards the child support arrears," [Dckt. 9-2 at 1], the Family Court created a domestic support obligation with respect to the property sale proceeds in the 2016 order. The debt to be paid by that portion of the proceeds ordered to be applied to the child support arrearages thus falls under § 523(a)(5) and is therefore nondischargeable. The portion of the debt from the property sale proceeds that is nondischargeable under § 523(a)(5) is equal to the amount of the child support arrearages that existed at the time the property was sold. The 2016 order did not anticipate any further arrearage when it ordered the arrears to be paid through the proceeds at the time of sale. Of course, any further arrearage that has accrued since the date of sale is likewise a nondischargeable domestic support obligation; however, any such arrearage is not tied to the proceeds of the property sale.

## 2. Remainder of the Debt

The remainder of the debt owed to Tabitha -- the amount that was to be paid to her after the payment of the child support arrears -- is not a domestic support obligation governed by § 523(a)(5). The 2016 order stated that the balance of this debt was to be paid to "reduce the judgment" against Peter. [Dckt. 9-2 at 1]. Additionally, both the 2014 and the 2016 orders make clear that no spousal support was to be paid to Tabitha, [Dckt. 9-1 at 6; Dckt. 9-2 at 1], and there is no indication that the remainder of the debt is "in the nature of support." As discussed above, Tabitha has made no showing that this portion of the debt is alternatively governed by § 523(a)(4).

Accordingly, the remainder of the debt falls under § 523(a)(15), which encompasses debts owed to a former spouse incurred in the course of divorce by court order that are not domestic support obligations. Therefore, this portion of the debt is dischargeable.

It is, accordingly, **ORDERED** that Peter's motion for summary judgment be, and hereby is, **DENIED**, and Tabitha's cross-motion for summary judgment is **GRANTED** to the extent stated above and otherwise **DENIED** as to its residue.